Kreindler and Kreindler, LLP, versus the Kingdom of Saudi Arabia, Case Number 23-1170. Mr. Moss. Judge Loyer, may it please the Court. At the contempt hearing below, all direct evidence, whether documents or testimony, confirmed the truth of John Fawcett's confession. He acted alone in leaking a deposition transcript to the press, and he lied to and hid his misconduct from the firm. The Court nevertheless found that Jim Kreindler, a 20-year co-chair of the Executive Committee, directed the leak because he thought he could embarrass Saudi Arabia into a settlement. In doing so, the Court made findings inconsistent with documentary evidence, placed significant weight on peripheral and ultimately irrelevant findings. Can you explain to me why we have jurisdiction in this case? Absolutely, Your Honor. So the class of orders here on appeal are Rule 37b, non-party sanctions based on a protective order. Under that class, one satisfies the three factors outlined in Cohen. It also satisfies this Court's precedent in Farber, a separate reason. And then in these circumstances, the Court can exercise hypothetical appellate jurisdiction. Just to take those in turn. So would you address Richardson-Merrill? Yes, Your Honor. So Richardson-Merrill doesn't impact the class of orders that are on appeal here. The class of orders are, because they are targeted at a non-party, not a lawyer like Richardson-Merrill was, they are effectively unreviewable on appeal from a final judgment. Why are they unreviewable on appeal? That is, the only thing that might be unreviewable really is your removal from the committee. But the removal from the committee, the district court said, was separate from any sanctions order because the court said, I created the committee and I removed the committee. So if we take that off, why isn't everything else a perfectly standard kind of thing, which is unpleasant to review, but is reviewable later? So I think there are a few parts to your question, Judge Calabresi, and I'd just like to start with the fact that the Supreme Court in Mohawk Industries said that the inquiry here is not case by case, it's not individualized. You have to look at the entire class of orders. So we need to look at how the district court used Rule 37B and its reasoning. It didn't just sanction attorneys, as opposing counsel has argued in the papers. It also sanctioned a non-party, a non-lawyer, Mr. Fawcett. So the class of orders is broader than just attorney sanctions. And the justification the district court gave was that its protective order defined— Why is that not reviewable on appeal? We're back to the—you know, you're arguing the merits, and that's an interesting question as to whether Fawcett was sufficiently close and so on. But we're back to saying, why isn't this reviewable later? And so the third—I'm granting you the first two. Why is the third one better? So as an individualized inquiry, if this was just a class of orders that sanctioned counsel, I would agree with you. But it doesn't. It is broader than just that. Mr. Fawcett, if he wanted to appeal, for example, in this case, he didn't. He accepted his punishment. But if he did, he would not have the ability to do so because he is a third party, and he has no appeal as of right from a final judgment. So he would be, and is, effectively marooned before the district. Mr. Fawcett, what are you relying on for the idea that we consider the class of orders issued, including against a party that didn't appeal the order? Your Honor, I don't have a specific case as to whether you have to consider a party that doesn't appeal within the class. But you need to look at how the court used its powers below. So Rule 37b was used in this very broad way. If the court were to sort of bless the reasoning of the district court, that because the protective order defined party to include counsel, counsel's employees, that type of reasoning would extend to a deposition stenographer that leads to transcript. But how does that affect our jurisdiction, appellate jurisdiction? Because you can make those arguments later on. I'm sorry, Your Honor. You can make these arguments later on. I mean, let the underlying litigation proceed. You can make these arguments later on. We, as a law firm, may be able to. It's unclear whether we would be able to appeal from a final judgment. The court's precedent is not clear on that point. But again, the class, there is no finding by the district court. I think this is an important point. The idea that you and your client's interests align would suggest that should your client have an interest in appealing, you think it's not clear if your client is appealing that there wouldn't be jurisdiction to consider it after final judgment? There may be. But I think this is an important point. On the record before this court on appeal, there was no finding by the district court that the law firm was acting on behalf of its client. Its conduct could be imputed to its client. So on appeal, the law firm is a non-party in this case. Isn't that an agency principle that would apply? That is an agency principle. And I think as a matter of law, under the Maples case we cite, the conduct, the allegations here, and the findings of the court would not qualify as the sort of negligent. But why wouldn't you have still jurisdiction to raise the question on appeal? It's unclear whether the law firm would. Why is it unclear? That is, that would become a question on the merits on that appeal, and therefore there would be jurisdiction to discuss the appeal, which you might win or lose. But on the question of whether there would be jurisdiction on appeal, isn't the possibility sufficient to create that jurisdiction? I don't think it is. Again, Mohawk Industries says it needs to be a class of order inquiry, not an individualized one. I understand the court's questions as to our client being a law firm, but the law firm, because there was no finding by the district court, that the law firm was acting as an agent of its client, it was sanctioned as a non-party in this case, as was Mr. Fawcett. So the class of orders are non-party sanctions based on a protective order, and that class is not effectively reviewable on appeal because there's no appeals of right, and the merits question is completely separate. So I think we've got the benefit of that argument on jurisdiction. Why don't you turn to the merits? Absolutely, Your Honor. So I just want to point out, I see my time is running low. Go ahead. I want to point out a few major factual errors the magistrate judge made at the contempt hearing. And our standard review of the factual findings? This court has said in Walter's Clure that when the judge is serving as the accuser, fact finder, and sentencing judge, it is a more exacting review than under the typical clear air standard. Let's assume clear air for now. I don't know what that means, so let's assume broadly speaking clear air. You're saying clear air with bite or something. It is. And I think, honestly, Your Honor, I think given the circumstances here, the pretty extraordinary procedures ahead of the proceeding, the procedures at it, and the lack of true adversarial briefing afterwards or oral argument, there should be some teeth to the review. But the main and most salient evidence before the court at the contempt hearing was not engaged with by the district court in its opinion. Mr. Fawcett's written confession, which he wrote in his own words after repeatedly seeking out advice of counsel. That document says that nobody at the firm directed him to leak the transcript. Nobody knew about his misconduct before he confessed on September the 27th, and he provided the reason for leaking. But then the magistrate judge did rely on a number of different calls and what appeared to be relatively long communications at the relevant times to make an inference. Is that also subject to clear air, whether or not with bite? Is that right? So the two factual findings, that finding is subject to the clear air with bite. That finding, though, is not what sort of undergirded the court's reasoning for sort of implicitly discrediting Mr. Fawcett's confession. The two things that she found that would potentially provide that are erroneous. One is that he was the firm's cat's paw, which is a phrase that is used at the end of the opinion in SPA 57. There's no evidence in the record for that. In fact, it cuts the other way. He destroyed evidence. He penned his own confession. What about the editing of the document? He edited it so much so that the district court said he was apparently unwilling to sign a perjurous document. And he and he alone continued to communicate with the journalist, both from July 15th when the article came out through the end of September when he confessed. So the evidence shows that he was acting of his own accord at all times below. The second aspect of the finding that might support sort of implicitly discrediting his state, his written confession, was the court found that he had extreme loyalty to the firm. That finding was based on Mr. Fawcett's statement at the contempt hearing in the words of opposing counsel, that he had a certain amount of loyalty to the firm. I don't know what that means, but given the uniform testimony by everybody at the contempt hearing, all documents demonstrating the same thing, Mr. Fawcett acted alone. I don't know how that finding can have so much weight that it overcomes the significant evidence cutting the other way. You're saying the testimony was he had some loyalty, and the fact finding was that he had loyalty, and that's not an available inference? No. The fact finding was he had extreme loyalty to the firm. I'm sorry. No, that's the difference. Same question. Well, I think it's material, Your Honor. The inference of extreme or the finding of extreme loyalty would need to be made to support a finding that Mr. Fawcett would continually perjure himself in multiple declarations and at a two-day contempt hearing with advice of counsel. There's just no evidence for that, and the evidence cuts actually the other way. I see my time's up, so I, you know, hold it up. Very briefly, if we disagree with you on the clear or with or without bite issue, what is your best argument? I think the cleanest way for the court to address the issues with the district court's opinion is the use of Rule 37B. So there's an alternative basis, inherent authority. Well, the court used inherent authority to only remove the firm from the plaintiff's executive committee. It didn't use that to affirm the monetary sanctions. Can we say that any error was harmless because there was inherent authority, and I know the standard for inherent authority is higher, but that it was plainly met? So, Your Honor, when inherent authority is being used to issue a sanction and removal from the plaintiff's executive committee here was a sanction, the standard is clear and convincing evidence. That's the Yukos Capital case we cite. The court didn't cite clear and convincing evidence of that. In fact, on the court's opinion at SBA, this is Judge Daniels' opinion, he says he relies on the same fact findings of the district court, the firm leaking the transcript, having a sham investigation, misleading and false statements in the affidavits. There are serious errors, as we've outlined in our papers, as to all of these findings, and he relied on those in exercising his inherent authority. So you say we cannot say ourselves that the higher standard was met? I think that's exactly right. I'll just point out one other point. If we could, that would cover the case. If you could, that could be as to removal from the plaintiff's executive committee, but we still have this issue of counsel's attorney's fees, which is in the millions, and common benefit funds. Just real quick, sorry to circle back, but on jurisdiction, removal from the executive committee seems to me to be a subset of disqualification. There's no appellate jurisdiction as to a disqualification sanction, correct? As to a disqualification sanction, I would agree. I don't agree that it's a subset. The removal from the plaintiff's executive committee, and this ties into Farber a bit, is losing the ability to make arguments in an MDL like this on your client's behalf. That's problematic because of waiver issues. So a party is ceding their ability to make certain arguments that they would want, and if an argument is As a member of the executive committee, but not in other contexts. Representing individual clients. Right, so the firm no longer has the ability, as of right, to make arguments on its client's behalf. It has to petition the court to do so. So in those circumstances, this is where Farber kicks in. A lawyer has lost the ability to make arguments on the client's behalf. That is problematic because at the end of a case, the lack of an argument being made is effectively unreviewable. There's waiver issues that take place there. It's also separate from the merits because it's just not merits related. It's who can argue what. So Farber, even if this court doesn't have jurisdiction under the collateral order doctrine, Farber is still binding law on this court. Well, that's a question, right? Whether it's been superseded by subsequent cases. That is an argument. Correct, Your Honor. That is an argument opposing counsel has made. They cite both Cunningham and Richard Merrill. Cunningham addressed Rule 37A sanctions that was concerned about issues relating to the merits. When you have discovery violations, I'm refusing to produce documents. That inherently is going to get to whether the documents are relevant. I've kept you past your time. You've reserved two minutes for rebuttal. We'll hear from you on the other side for the Council of the Kingdom of Saudi Arabia. Good morning. Good morning. Thank you, Judge LeVere, and may it please the court. The Kreindler firm deliberately violated the protective order. Researcher John Fawcett leaked a deputation transcript to a reporter, and he coordinated with and got a least tacit, if not explicit, approval from supervising partner James Kreindler. Mr. Kreindler then made knowingly false and misleading statements to the district court to cover that misconduct up, and those included implausible explanations that magistrate Judge Netburn, after hearing him testify, found not to be credible for two sequences of suspiciously timed phone calls. And then other attorneys working under Mr. Kreindler's supervision made false and misleading statements of their own. Those included misrepresentations about their deficient internal investigation of the leak and about who had access to the transcript within the firm. The answer was everyone, and they tried to cover that up. Kreindler attorneys also edited Mr. Fawcett's declaration to understate the true extent of the leak and to fabricate a personal motive for making it. And Kreindler attorney Megan Bennett wrote a declaration for firm IT staffer John Hartney that he told her was not, quote, truthful, end quote, and she had him signed and filed with the court anyway. Based on those and other factual findings, the district court had ample authority to impose sanctions under Rule 37b. Lawyers are agents for their clients, and so when a lawyer violates protective order in the course of his representation, the client also violates the order. You say we have no problem of this third-party business under 37, but it's all not really in this case. I agree.  Yeah, no. Yes. So, I mean, with regard to whether Mr. Fawcett could have made an argument, so Judge Netburn did consider that. She did find that he was acting as an agent of the attorneys, and I think that ruling was correct, but it's also not challenged on appeal. So it's not a problem for you. And as Your Honor has also noted, if there's any doubt about the Rule 37b authority, there's a separate finding by Judge Daniels. He did explicitly find clear and convincing evidence that the firm lacked any basis for its representations to the court in July and August that it was not the source of the leak. So even if there were some doubt about the 37b authority, he would have imposed the sanctions under the inherent authority. And he also noted— The full range of sanctions. So he addressed—within the inherent authority of his section of his opinion, he addressed the removal, but I think a fair reading of the opinion is that he intended to— We're acting, boys, if we have jurisdiction. And our first series of questions were, is this collateral order appealable? Yes, Judge Calabresi. So we have maintained that it is not, and I adhere to those arguments. I think Cunningham and Richardson merit control. However, I also—the court did direct us— Do you think we can assume jurisdiction to a firm? I think you can. Which is what you prefer. Yes. And now that the case has been fully briefed, the resources have been expended, the panel directed— That's what they all say, by the way, now that the case has been fully briefed. Well, I mean, I think— Why was it decided even though you may not have jurisdiction? So, Your Honor, I mean, it is clear under this court's precedent that hypothetical jurisdiction is an option. And so the question is, is it one that you should exercise? And yes, the fact that it's gotten this far, I think, counts in favor of exercising hypothetical jurisdiction. It's a little strange to me. I've been a proponent of exercising hypothetical jurisdiction. But it's a little strange to me that we would bootstrap Section 1291 as the basis for exercising hypothetical jurisdiction, as opposed to a standalone, you know, ERISA statute or some other standalone statute. I think we've only done that maybe once, and it's unclear. I take Your Honor's point. It is a statutory limit on jurisdiction, so I think the logic of butcher still applies. But certainly, if you wish to dismiss the case for lack of jurisdiction, you would have discretion to do that, discretion to reach the jurisdiction, the actual jurisdiction question. You're saying the only bar on hypothetical jurisdiction is when it is a constitutional matter. That's that wretched opinion by Justice Scalia, before which we would do hypothetical jurisdiction all the way and very easily. But whatever it is, it doesn't apply here. Yes, Your Honor. I believe that is the holding of butcher and of the other decisions of this court that butcher cited. So this panel, I believe respectfully, is bound by that. Hypothetical jurisdiction is available here. And I don't, and to Judge Lohear's question, I don't see a basis for distinguishing 1291. But I acknowledge it's an extension. You acknowledge it's an extension. We have not really precisely dealt with that issue. Of 1291 as the basis for exercising hypothetical jurisdiction. I agree. It's an extension. I think it's warranted by the reasoning that I agree it's an extension. With regard to the questions of Rule 37 authority, I think it's conceded that there is Rule 37B authority to sanction when the lawyer is acting on behalf of the client. I think that's common ground. The question is whether there's a sufficient showing here that these lawyers were acting on behalf of their clients. And we think that there is a sufficient showing for two reasons. First, because these lawyers only had access to the material, the confidential material that they had the duty to protect, as a receiving party under the court's protective order. And so as representatives. I'm sorry. I'd like to go back to that hypothetical jurisdiction because just maybe a small technical point. Do we have a case that is sufficiently on point under 1291 so we could do that if we agreed on that by summary order? Or is that something that because we don't have, we would have to write an opinion about that? No, no. There's nothing in the opinions that is to the contrary. And there's everything suggesting that we could take hypothetical jurisdiction and reach a merit. But is it something we would have to write on? I would say you could do it by summary order if you find the logics. I mean, the court, Butcher noted that the court often. But we don't have an opinion directly on points. You don't have an opinion directly on points. So I could certainly see, Your Honor, concluding you would have to write. I mean, I guess that would be your decision. Not your decision. Of course not. I'm sorry, Your Honor. I didn't mean to overstep. But I mean to say there's a limited extent to which I can advise the court on whether to write. It seems to me it's covered by the logic of Butcher. So general agency principles apply to the Rule 37B issue. This law firm had access to the confidential documents and had a duty to protect the documents on behalf of its client. And there was also testimony that the strategy of speaking to the press that Mr. Kreimler gave on the stand, he explained he was doing this in order to attempt to secure a favorable resolution. And he also explained on the stand that he talks to the press because he thinks it's good for the case. And so in that sense as well, whether or not the individual leak was a wise move in support of that strategy, I think it was a profoundly unwise one. But I think there was sufficient basis for the district court to conclude that it was intended to be a part of the press strategy that the firm pursued and, therefore, is fairly attributed to their clients for that reason as well. Now, your friend, in connection with the clear error argument, mentioned the magistrate judge's decision as to Mr. Fawcett and his level of loyalty. Can you just respond briefly to that? Certainly. So magistrate judge, Judge Netburn, heard the testimony. She saw James Kreimler break down in tears on the stand when he was talking about how much he respected John Fawcett. She saw John Fawcett give what I think is conceded to be false testimony about the July 22 call, I believe it is, the one where he went back and forth between talking to the defense lawyer and talking to James Kreimler. James Kreimler. And he definitely lied about that on the stand because he first said that it had been a personal matter, and then it came back and corrected that after a recess and said that he'd called Cardi because he saw the court order, but there was no court order. So he was not being candid with the court when he gave that testimony. And I think Judge Netburn could reason that it could infer that that was to protect Mr. Kreimler because Mr. Fawcett had already admitted his own violation. So the idea is that if he is able and willing to commit perjury in a court proceeding, then that itself exhibits or conveys a level of extreme loyalty. Yes. Is that the idea? That is. That is evidence of his loyalty because the only motive he had to commit perjury, which he very clearly did, was to protect Mr. Kreimler because it wasn't going to help Mr. Fawcett at that point. There's also the past practice of giving documents to the press at attorney direction, which both Mr. Kreimler and Mr. Maloney testified to. There's the additional false statements, which included a false statement by Mr. Kreimler, about the earlier phone call where Mr. Kreimler claimed this is the June 28th phone call exchange where Mr. Kreimler testified that he called Mr. Fawcett to ask whether the document could be shared with Mr. Isikoff, and Judge Netburn found that not credible because it required her to believe that, A, Mr. Kreimler didn't know the protective orders that he testified earlier that he did, B, that he was asking a non-lawyer for advice about them, and C, that after Mr. Fawcett told Mr. Kreimler that the documents couldn't be shared, which is what Mr. Kreimler said happened, Mr. Fawcett then went around and leaked them anyway. And Judge Netburn found that to be implausible given, again, the strong reciprocal loyalty. The last piece of evidence that this went beyond Mr. Fawcett, or the last big category of evidence perhaps, was the flaws in the firm's investigation, the crime of the firm's investigation. Its failure to conduct a credible investigation, the lack of direct questioning of Mr. Fawcett, and that's been challenged as clear error, but I submit it was not. I'm happy to get into that if the court likes. And in general, the inference that can be drawn from the fact that Mr. Maloney, who was a former federal prosecutor from the Southern District, and well knew how to conduct an investigation, simply didn't do that here. And the district court could reasonably infer that he didn't do that here because he knew that the evidence he would turn up would not be favorable to his firm, or knew or at least suspected. I should say that she left open the possibility of willful blindness rather than actual knowledge. But it comes, frankly, to the same thing. Unless the court has further questions, I would say that the record fully supports the district court's removal of the committee and the monetary sanctions, and I'd ask that the judgment be either dismissed for lack of jurisdiction or alternatively affirmed. Thank you. Counsel. Your Honors, just four points. On hypothetical jurisdiction, this court can exercise it and reverse. It did so in Springfield Hospital two terms ago. You heard my question to your friend about 1291 as a basis to exercise hypothetical jurisdiction. It's a little strange to me, but at least the answer from your friend is that that would, if we relied on that to exercise hypothetical jurisdiction, represent an extension of our case law. Do you agree with that? I do agree with that. There was a case from the late 90s, I believe, where it potentially happened once.   I think it was an unpublished opinion. But under the doctrine this court follows, under Steele Company, it would be permissible. It is particularly permissible here where it wasn't. I wonder if one day the Supreme Court is going to catch up with us. They just might, Judge. Can we blame both of you? Maybe. Just on that point. But you said we could exercise hypothetical jurisdiction and reverse. I don't see how we can do that. I think just as a matter of- If we don't have jurisdiction, then we can't reverse. And saying, well, it's all right, we'll act as if we have it, that's fine if we affirm. But I've never seen a case where we have exercised hypothetical jurisdiction and reversed. Springfield Hospital, which we cite in our opening brief and reply brief from two years ago, is an example of that. The court avoided a jurisdictional issue, threshold, subject matter jurisdiction issue, and affirmed based on a reading of a statute. It's got to be wrong. It's got to be wrong. It is binding on this court, regardless of whether it's right or wrong. I mean the idea that I think Judge Calabresi- I mean, you know, we are bound by previous holdings, but we have no need to follow them if they're wrong, if we can handle the thing in a different way. This court, of course, has discretion to handle it as it wishes. One other point on jurisdiction here, and I think it's sort of alighted in the briefing. It is Saudi Arabia that brought the meritless claim below, that Rule 37 be applied, not us. So this would be a situation where the court would be avoiding a novel jurisdictional issue and resolving the merits issue that is straightforward because Apex Oil Company drives the inquiry. If that wasn't there, the text is plain, in a way that avoids an advisory opinion, which is one of the principles underlying Steele Company that concern the court. When you have an opinion that is on the books that drives the outcome on the merits, it resembles an advisory opinion to reach the jurisdictional issue. One point on- I'm sorry. I've got to go back on that. So let's just say that we exercise hypothetical jurisdiction. Part of the reason that we do so is because we think that the underlying merits are much easier to resolve than some of these jurisdictional issues that both of you have raised. On the merits, the issues before us are clear error or not, with or without light. De novo on the legal challenge. De novo on the Rule 37 issue and on the inherent authority issue, I take it. But what is complex about the inherent authority issue? I don't think it is complex. I think the court used inherent authority to issue a sanction that requires clear and convincing evidence, and the court at SPA 97 regurgitates the same findings of the magistrate judge made about the firm leaking of sham investigation. But that ties into your clear error analysis, correct? It does. I mean, the court needs to rely on an accurate record when imposing sanctions. Your Honor, if I may, just two points on facts. One about the phone calls and one about Mr. Maloney's investigation. So the July 22 phone call that opposing counsel discussed, a third person was on that call, Steve Poonian. He submitted call logs showing he was on the full 46-minute phone call in the morning and the five-minute phone call in the afternoon. The judge at the contempt hearing or following the contempt hearing did not engage with that fact and treated the call as between Mr. Kreinler and Mr. Fawcett. That is just error. You have to deal with evidence that touches, that is relevant to the judge's inquiry, and she just didn't hear. Two findings also undergirded her ruling about Mr. Fawcett could not be duplicitous, going back and forth from speaking to his personal counsel to having a phone call with Mr. Kreinler without revealing what he had done. One is the extreme loyalty finding, which is erroneous, and the other is that Mr. Fawcett confessed immediately when presented with his declaration. That is belied by the record. Thank you. Thank you, Your Honor. Thank you very much.